# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony L. Rodrigues,<br><br>    Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Defendants. | No. CV-16-08272-PCT-DGC (ESW)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:**

On November 17, 2016, Arizona state prisoner Anthony L. Rodrigues ("Plaintiff") filed a seven-count civil rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 against a number of Defendants. The Court dismissed without prejudice all claims except the threat-to-safety claim contained in Count Two. (Doc. 7 at 8, 10-11). The Court required Defendants Ryan, Diaz, Rider, Santiago, Frederick, and Winkler to answer that claim. The Court dismissed without prejudice Defendants Marquardt, Washington, Sterns, and Shaw from the action.[1] (*Id.* at 10-11).

In a separate Order, the undersigned granted Plaintiff's "Notice and Motion to Amend Prisoner Civil Rights Complaint" (Doc. 9). The undersigned has screened the First Amended Complaint (Doc. 20) pursuant to 28 U.S.C. § 1915(A). As the

---

[1] The docket reflects that service has been effected on Defendants Diaz, Ryan, Rider, and Winkler. (Docs. 14-17).

undersigned's determination is dispositive of some of Plaintiff's claims, the undersigned makes the following Report and Recommendation pursuant to Rule 72(b), Fed. R. Civ. P., and 28 U.S.C. § 636(b)(1)(B) and (C).

## I. LEGAL STANDARDS

### A. Screening the First Amended Complaint

The Court has a continuing obligation to screen complaints brought by prisoners seeking relief against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The screening requirement extends to proposed amended complaints as well as complaints initially filed in an action. The Prison Litigation Reform Act, 42 U.S.C. § 1997e (c)(1), requires the Court to dismiss all allegations that fail to state a claim upon which relief may be granted. *See O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008). The Court must dismiss a complaint or portion thereof that is legally frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from suit. 28 U.S.C. § 1915(A)(b)(1), (2).

In reviewing Plaintiff's First Amended Complaint, the Court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296-98 (9th Cir. 1998). A claim for relief must be plausible on its face to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679.

Finally, a first amended complaint supersedes the original complaint. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat a first amended complaint as nonexistent. *Ferdik*, 963 F.2d at 1262 ("after amendment the original pleading no longer performs any function and is treated thereafter as non-existent") (internal quotation marks and citation omitted). Any cause of action that was

raised in the first amended complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a second amended complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

**B. Stating a Claim under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege *facts* supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). With respect to each defendant named in a particular count, a "plaintiff must allege facts, *not simply conclusions*, that show that [the] individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (emphasis added). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

In addition, "[t]here is no respondeat superior liability under § 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989); *see also Iqbal*, 556 U.S. at 676–77*; Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and internal quotation marks omitted); *Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (absent a positive act on behalf of the supervisor, the plaintiff must show an "affirmative link" between the supervisor's acts and the alleged constitutional violation).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to

inflict a constitutional injury." *Baca*, 652 F.3d at 1207-08; *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ("Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others."). "[W]here the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." *Hydrick v. Hunter*, 669 F.3d 937, 941 (9th Cir. 2012) (internal citation and quotations omitted).

## II. DISCUSSION

The First Amended Complaint contains six counts. As explained in the Court's March 1, 2017 Order:

> Put generally, Plaintiff's claims arise from a riot occurring at ASPC-Kingman in July 2015. Broadly speaking, Plaintiff alleges that the Defendants, through a lack of training and oversight, allowed ASPC-Kingman to devolve to the point that the riot broke out, and then failed to ensure that their response to the riot was within constitutional limits. Accordingly, Plaintiff alleges that, due to the Defendants' action, he did not participate in the riot but was nevertheless injured in it, and also suffered some amount of property damage or loss that he has been unable to recoup through the prison grievance process.

(Doc. 7 at 3). Plaintiff explains that the ASPC-Kingman prison complex is owned and operated by Defendant Management Training Corporation ("MTC"). (Doc. 20 at 4-6). Attached to the First Amended Complaint is a report by the Arizona Department of Corrections detailing the investigatory results of the July 2015 riot at ASPC-Kingman. (*Id.* at 47-60).

### A. Count One: Excessive Force Claim

Plaintiff styled Count One of the original Complaint as an Eighth Amendment excessive force claim. (*Id.* at 4). The Court dismissed the claim as Plaintiff did not make any allegations that the named Defendants used force against him. (*Id.* at 4-5). Count One of the First Amended Complaint is also styled as an Eighth Amendment excessive force claim. (*Id.* at 4). Like in the original Complaint, Count One of the First Amended Complaint does not allege that any of the named Defendants used force against him. (Doc. 20 at 4-18). As such, it is recommended that the Court dismiss Count One of the First Amended Complaint.

### B. Count Two: Threat-to-Safety Claim

The Court found that Count Two of the original Complaint stated a threat-to-safety claim against Defendants Ryan, Rider, Santiago, Diaz, Winkler, and Frederick. (Doc. 7 at 8). Plaintiff reasserts this claim in the First Amended Complaint. (Doc. 20 at 19). The undersigned recommends that the Court order Defendants Ryan, Rider, Santiago, Diaz, Winkler, and Frederick to answer Count Two of the First Amended Complaint for the reasons explained in the Court's March 1, 2017 Order. (Doc. 7 at 8).

### C. Count Three through Six: State Law Claims

Plaintiff asserts state law tort claims in Counts Three through Six. (Doc. 20 at 25-35). Except in circumstances not present in this case, the Court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, the Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

### 1. Count Three: Common Law Negligence

In Count Three of the First Amended Complaint, Plaintiff raises an Arizona state law claim for "common law negligence" against Defendants MTC, Washington, Rider, Santiago, Frederick, and Winkler. (Doc. 20 at 25-29). "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). The Arizona Supreme Court has explained that "[t]he doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees." *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 601 (Ariz. 2012) (quoting *Tarron v. Bowen Mach. & Fabricating, Inc.*, 235 P.3d 1030, 1033 (Ariz. 2010)). Liability under this theory requires (i) an employer-employee relationship; (ii) underlying negligence committed by the employee; and (iii) that the employee's negligent conduct "occurred during the course and scope" of his or her employment. *State v. Superior Court*, 524 P.2d 951, 953 (Ariz. 1974); *Engler*, 280 P.3d at 601.

Count Three incorporates by reference the allegations contained in Counts One and Two. (Doc. 20 at 25). Plaintiff alleges that Defendant MTC, through its employees such as Defendant Washington, Rider, Santiago, Frederick, and Winkler, was "negligent and whose negligence was the proximate cause of the [July 2015] riot . . . ." (*Id.* at 27-28). The allegations supporting this assertion include the following:

1. Plaintiff states that Defendant Washington was employed by MTC as the "senior vice president of corrections" and was responsible for "all MTC correctional services contract administration and enforcement at twelve (12) correctional facilities, including ASPC-Kingman." (*Id.* at 5). Plaintiff alleges that:
> Prior to and including 7/4/2015 . . . Defendant Odie Washington in order to reduce MTC operational cost and increase corporate profits by incarcerating ADOC inmates in MTC privately operated correctional facilities, including

> ASPC-Kingman, promoted a corporate wide policy, practice, or philosophy of cutting cost by intentionally understaffing and providing inadequate training and supervision of MTC security staff and personell [sic] then failing to provide adequate monitoring, oversight, and enforcement of correctional services contract AD9-010-A3, resulting in injury to the Plaintiff.

(*Id.* at 6).

2. Plaintiff alleges that Defendants Ryan,[2] Diaz, Washington, Rider, Santiago, Frederick, and Winkler "did not have a [sic] adequate number of security personnel on duty and the staff present were not adequately trained or equipped to dispel the disturbance." (Doc. 20 at 9).

3. Regarding the riot that occurred on July 2, 2015, Plaintiff alleges that the "ADOC [Tactical Support Unit] commander present advised Defendant Rider his team was prepared to respond, however, the incident commander at the time, Defendant Rider, ordered him to stand down." (*Id.* at 10).

4. Plaintiff further asserts that:
> Defendant Rider and Winklers' unwillingness or inability to comply with repeated telephonic directives from Defendant Ryan and Diaz to retake control of the inmates and the building allowed the rioting to spread to adjacent housing units, including Plaintiff's housing Unit 1-A, where inmates continued rioting and destroying property for a [sic] additional 6-10 hours.

---

[2] This allegation is contained in Count One, which Plaintiff has incorporated by reference in Count Three. Count Three, however, does not direct the negligence claim against Defendant Ryan. To the extent Plaintiff is asserting a common law negligence claim against Defendant Ryan, the undersigned recommends that it be dismissed. First, Plaintiff has not alleged that he has complied with the notice of claim procedures in ARIZ. REV. STAT. § 12–821.01.

Second, ARIZ. REV. STAT. § 31-201.01(F) provides that "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." A state or state agency may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Although ARIZ. REV. STAT. § 31-201.01(F) amounts to a waiver of Arizona's immunity from suit in its own courts, it does not constitute a waiver of the Eleventh Amendment immunity from suit in the federal courts. *See Mach v. Arizona*, No. CV 11-1734-PHX-DGC (MEA), 2011 WL 4101159, at *3 (D. Ariz. Sept. 8, 2011) (holding that state may not be sued in federal court pursuant to Arizona Revised Statutes section 31-201.01(F)).

(*Id.* at 9-10).

5. Plaintiff asserts he sustained injuries during the quelling of the riot. (*Id.* at 12-15).

Liberally construing the First Amended Complaint, the undersigned finds that Plaintiff has stated a negligence claim against Defendants Washington, Rider, Santiago, Frederick, and Winkler. *See Olgin v. Darnell*, 664 F.2d 107, 109 (5th Cir. 1981) ("Jailers are not obliged to await riots or fires in jail, or to suffer repeated assaults on other inmates before taking preventive action; indeed, they would be derelict if, having the warning of violent action and the threat of arson, they awaited repetition of mayhem or fulfillment of the threat before responding.").

The undersigned further finds that Plaintiff has adequately alleged that Defendants Washington, Rider, Santiago, Frederick, and Winkler have an employer-employee relationship with Defendant MTC and that their alleged negligent acts and omissions occurred during the course and scope of their employment. (Doc. 20 at 27). As such, the undersigned finds that Plaintiff has stated a negligence claim against Defendant MTC based on a vicarious liability theory.

In addition, Count Three raises a state-law negligent training claim against Defendant MTC. Arizona case law provides that to prevail on a negligent training claim, a plaintiff must show that a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of the plaintiff's injuries. *Inmon v. Crane Rental Servs., Inc.*, 67 P.3d 726, 733 (Ariz. Ct. App. 2003), *disapproved of on different grounds, Tarron v. Bowen Mach. & Fabricating*, 235 P.3d 1030 (2010).

Plaintiff asserts that MTC's contract requires it to develop a procedure to be utilized in the event of an inmate disturbance and that MTC "negligently failed" to develop or implement such a procedure. (Doc. 20 at 28). Plaintiff alleges that MTC "adopted a national policy and practice of cutting cost by . . . understaff[ing] and providing inadequate training to its prison staff." (*Id.* at 26). Plaintiff asserts that this policy was in place at ASPC-Kingman. (*Id.* at 26-27). Plaintiff further alleges that

Defendant MTC "negligently trained and monitored its employees, resulting in employee use of excessive force and improper force." (Doc. 20 at 28). Plaintiff states that Defendant MTC staff used excessive force on inmates prior to the riot, which angered many inmates. (*Id.*). Plaintiff alleges that Defendant MTC "was warned by members of its staff and by inmates" that inmates were unhappy with prison operations and would riot if the issues and grievances were not addressed, but Defendant MTC took "no remedial action." (*Id.*). Liberally construed, the undersigned finds that Plaintiff has sufficiently alleged a negligent training claim against Defendant MTC.

For the above reasons, the undersigned recommends that the Court require Defendants MTC, Washington, Rider, Santiago, Frederick, and Winkle to answer Count Three of the First Amended Complaint.

### 2. Counts Four, Five, and Six: Assault and Battery, "Outrageous Conduct," and Civil Conspiracy

Plaintiff reasserts the Arizona state law claims for assault and battery, "outrageous conduct," and civil conspiracy that were raised in the original Complaint. (Doc. 20 at 30-35). The Court dismissed those claims because Plaintiff did not make allegations against any specific Defendant or otherwise explain how each Defendant has specifically committed those torts. (Doc. 7 at 7-8). As shown below, Plaintiff's First Amended Complaint fails to correct this deficiency.

Count Four of the First Amended Complaint alleges assault and battery. (Doc. 20 at 30). "To establish a claim for battery under Arizona law, the plaintiff must allege that the defendant intentionally engaged 'in an act that results in harmful or offensive contact with the person of another.'" *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1209 (9th Cir. 2016) (quoting *Duncan v. Scottsdale Med. Imaging, Ltd.*, 70 P.3d 435, 438 (2003) (en banc)). "Similarly, a claim for common-law assault requires that the plaintiff allege that the defendant acted 'with intent to cause another harmful or offensive contact or apprehension thereof, and the other person

apprehend[ed] imminent contact.'" *Id.* (quoting *Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987)).

To support his claim for assault and battery, Plaintiff alleges that "Defendant MTC agents and/or employees used more force then [sic] a reasonable person under like circumstances would have used . . . ." (Doc. 20 at 30). As discussed, however, Plaintiff has not alleged that any of the named Defendants used force against him. Nor has Plaintiff named a John/Jane Doe Defendant for an unnamed employee of MTC's Tactical Support Unit. The undersigned finds that Plaintiff has failed to state an assault and battery claim in Count Four. It is therefore recommended that the Court dismiss Count Four.

Count Five of the First Amended Complaint asserts that "the conduct of Defendant MTC agents and employees . . . constitutes the common law tort of extreme and outrageous conduct, the proximate cause of which resulted in severe emotional trauma to the Plaintiff." (*Id.* at 32). This claim is supported only by vague and conclusory allegations. It is recommended that the Court dismiss Count Five of the First Amended Complaint for the same reasons it dismissed the "outrageous conduct" claim from the original Complaint. (Doc. 7 at 7-8).

Count Six of the First Amended Complaint asserts a state law civil conspiracy claim. (Doc. 20 at 34). "[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (2002) (internal quotation marks and citation omitted). Plaintiff has failed to allege any facts that would warrant a finding of an agreement by Defendants to accomplish an underlying tort. It is therefore recommended that the Court dismiss Count Six of the First Amended Complaint.

## III. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Court dismiss without prejudice Count One of the First Amended Complaint.

**IT IS FURTHER RECOMMENDED** that the Court order Defendants Ryan, Rider, Santiago, Diaz, Winkler, and Frederick to answer the Eighth Amendment threat-to-safety claim contained in Count Two of the First Amended Complaint.

**IT IS FURTHER RECOMMENDED** that the Court order Defendants MTC, Washington, Rider, Santiago, Diaz, Winkler, and Frederick to answer the Arizona common law claim for negligence in Count Three.

**IT IS FURTHER RECOMMENDED** that the Court order Defendant MTC to answer the negligent training claim in Count Three.

**IT IS FURTHER RECOMMENDED** that the Court dismiss without prejudice Counts Four, Five, and Six of the First Amended Complaint.

**IT IS FURTHER RECOMMENDED** that if the Court adopts this Report and Recommendation, the Court include the following language in its order:

1. The Clerk of Court shall send Plaintiff a service packet including the First Amended Complaint, this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants MTC and Washington.

2. Plaintiff shall complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

3. If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on Defendants within 90 days of the filing of the First Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

4. The United States Marshal shall retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

5. The United States Marshal shall notify Defendants MTC and Washington of the commencement of this action and request waiver of service of the summons pursuant to Federal Rule of Civil Procedure 4(d). The notice to Defendants shall include a copy of this Order. The Marshal shall file waivers of service of the summons or requests for waivers that were returned as undeliverable as soon as they are received. If a waiver of service of summons is returned as undeliverable or is not returned by Defendants within thirty days from the date the request for waiver was sent by the Marshal, the Marshal shall:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon (i) Defendant MTC pursuant to Federal Rule of Civil Procedure 4(h) and (ii) Defendant Washington pursuant to Federal Rule of Civil Procedure 4(e)(2); and

(b) Within ten days after personal service is effected, file the return of service for Defendants, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendants. The costs of service shall be enumerated on the return of service form (USM-285) and shall include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendants pursuant to Federal Rule of Civil Procedure 4(d)(2), unless otherwise ordered by the Court.

6. **If Defendants agree to waive service of the Summons and First Amended Complaint, Defendants must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

7. Defendants shall answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

# **EFFECT OF RECOMMENDATION**

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 16th day of May, 2017.

Eileen S. Willett
United States Magistrate Judge