# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony L. Rodrigues,<br>Plaintiff,<br>v.<br>Charles L. Ryan, et al.,<br>Defendants. | No. CV 16-08272-PCT-DGC (ESW)<br><br>**ORDER** |

Plaintiff Anthony L. Rodrigues, who was formerly confined in the Red Rock Correctional Center in Eloy, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 20.) Defendants move for summary judgment based on failure to exhaust administrative remedies, and Plaintiff opposes.[1] (Docs. 91, 127.) Also pending before the Court is a Report and Recommendation from the Magistrate Judge regarding Plaintiff's Second Amended Complaint.[2] (Doc. 103.)

**I.    Background**

In his First Amended Complaint (FAC), Plaintiff named as Defendants Arizona Department of Corrections (ADC) Director Charles Ryan; ADC Contract Bed Bureau Director Tara R. Diaz; Management Training Corporation (MTC), which operated the

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 100.)

[2] The Magistrate Judge previously granted Plaintiff's motion for leave to file a Second Amended Complaint. (Doc. 98.)

Arizona State Prison Complex (ASPC)-Kingman when Plaintiff was housed there in July 2015; former ASP-Kingman Warden Pamela Rider; former ASP-Kingman Deputy Warden Hector Santiago; former ASP-Kingman Associate Deputy Warden Shahana Frederick; former ASP-Kingman Chief of Security James Winkler; and MTC Senior Vice President Oddie Washington. (Doc. 20 at 2-3.)

Plaintiff's claims arose from a riot that took place at the ASP-Kingman in early July 2015. (*Id*. at 8.) Plaintiff alleged that Defendants, through a lack of training, oversight and staffing, and in order to save costs, allowed the prison to devolve to the point where a riot broke out. Plaintiff did not participate in the riot but he was injured when prison personnel responded to the riot. (*Id*. at 8-15.) As a result of the riot, Plaintiff suffered pain and discomfort, mental and emotional injuries, aggravation to pre-existing medical conditions that required hospitalization, property loss and damage. (*Id*. at 19.) After the riot, Plaintiff was transferred to the Red Rock Correctional Center in Eloy, Arizona. (*Id*. at 17.)

On screening of Plaintiff's FAC pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment threat-to-safety claim in Count Two and ordered Defendants Ryan, Rider, Santiago, Diaz, Winkler, and Frederick to answer that claim. (Doc. 27 (adopting Doc. 22, Magistrate Judge's Report and Recommendation).) The Court also determined that Plaintiff stated a negligence claim under Arizona law in Count Three and ordered Defendants MTC, Washington, Rider, Santiago, Diaz, Winkler, and Frederick to answer that claim and for MTC to answer the negligent training claim in Count Three. (*Id*.) The Court dismissed the remaining claims. (*Id*.)

In a December 6, 2017 Order, the Court granted in part and denied in part Defendants Ryan, Diaz, Rider, Winkler, and Santiago's Motion to Dismiss. (Doc. 72.) The Court granted the motion as to Plaintiff's Eighth Amendment official capacity claims against Ryan and Diaz and Plaintiff's state law negligence claim against Diaz. (*Id*. at 8.) The Court denied Defendants' motion on the basis of failure to exhaust administrative

remedies because the Court could not conclude from the face of the FAC that administrative remedies were made available to Plaintiff and that he failed to exhaust them. (*Id*. at 4, 8.) The Court permitted Defendants to renew their exhaustion argument in a properly supported summary judgment motion. (*Id*. at 8.)

On January 2, 2018, Defendants Ryan, Diaz, Rider, Winkler, Washington, Santiago, and MTC filed the pending Motion for Summary Judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. (Doc. 91.) The Magistrate Judge subsequently stayed all discovery unrelated to the exhaustion issue pending the Court's ruling on Defendants' Motion for Summary Judgment. (Doc. 109.)

On January 9, 2018, Plaintiff filed a Second Amended Complaint (SAC). (Doc. 99.) The Magistrate Judge has screened the SAC and issued a Report and Recommendation (R&R), recommending that:

    1. Count One of the SAC be dismissed without prejudice.[3]

    2. Defendants Doe, Santiago, Rider, Winkler, Frederick, Ryan (in his individual capacity only), and Diaz (in his individual capacity only) answer the Eighth Amendment threat-to-safety claim in Count Two of the SAC.

    3. Defendants MTC, Washington, Rider, Santiago, Winkler, and Frederick answer the Arizona common law negligence claim in Count Three of the SAC.

    4. Defendant MTC answer the negligent training claim in Count Three of the SAC.

    5. Counts Four, Five and Six of the SAC be dismissed without prejudice.

(Doc. 103 at 8-9.)

---

[3] In the body of the R&R, the Magistrate Judge found that Plaintiff stated a claim in Count One against Defendant John/Jane Doe, but did not recommend that the Court direct that service be made on Defendant Doe at this time. (Doc. 103 at 5.) It therefore appears that the Magistrate Judge meant to recommend that Defendant John/Jane Doe be required to answer the Eighth Amendment excessive force claim in Count One of the SAC and that Plaintiff be required to file a Notice of Substitution substituting Defendant Doe's actual name before service is directed.

The R&R further recommends that the Court require Plaintiff to file a "Notice of Substitution" within 60 days of the Court adopting the R&R to substitute Defendant Doe's actual name. (*Id.* at 9.)

**II. The Report and Recommendation**

**A. Legal Standard**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *accord Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna–Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.,* 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [magistrate judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn,* 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the [R & R] to which objection is made.").

**B. Discussion**

The parties were instructed of the time in which to file written objections to the R&R. (Doc. 103.) *See* 28 U.S.C. § 636(b). No party has filed an objection to the R&R. The Court has reviewed the R&R and will adopt it in part with the modification set forth above regarding Count One.

**III. Legal Standards**

**A. Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**B. Exhaustion**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*,

1  422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative
2  review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S.
3  81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534
4  U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative
5  process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**IV.  Facts**

    **A.  Plaintiff's Objections and Motion to Strike**

In his Separate Statement of Facts, Plaintiff moves to "strike all prohibited or unauthorized documents cited by Defendants" in support of their Motion for Summary Judgment because they were not disclosed to Plaintiff in advance. (Doc. 128 at 2.) Specifically, Plaintiff seeks to strike ADC Department Order (DO) 802, the Declaration

1  of Cheryl Dossett, who is ADC's Inmate Grievance/Disciplinary Appeals Officer, the Declaration of Jennifer Livingston, who is ADC's Medical Grievance Coordinator, and various grievance documents filed by Plaintiff and responses to those grievance documents. (*Id*. at 2-3.)

The Court denies Plaintiff's request to strike documents that were not previously disclosed. Local Rule of Civil Procedure 7.2(m)(2) prohibits motions to strike, unless authorized by statute or rule, and requires that objections to the admissibility of evidence be presented in the responsive pleading and not in a separate motion to strike. Plaintiff has not complied with this rule. Moreover, Dossett and Livingston appropriately authenticated the grievance documents and the testimony of Dossett and Livingston is relevant as to the grievance process and the contents of Plaintiff's grievances.

Also, Plaintiff objects to nearly every one of Defendants' facts on the basis that the cited document with attached exhibits was not disclosed to the Plaintiff. (*See* Doc. 128 ¶¶ 1-2, 5-51, 53-59, 72-74, 77-78.) However, Plaintiff does not say what discovery he requested from Defendants related to exhaustion or what Defendants failed to produce in response to his request. The only motion to compel filed by Plaintiff was for a non-party, CO III McNamer, to obey a subpoena duces tecum Plaintiff sent to McNamer for "riot related" documents. (*See* Doc. 89.) The Magistrate Judge denied the motion to compel, noting there was no dispute that Defendants had produced the grievance documents that Plaintiff submitted to prison staff during the relevant period and that Plaintiff had failed to show he was unable to adequately respond to Defendants' Motion for Summary Judgment without the documents requested in the subpoena. (Doc. 130.) The Magistrate Judge therefore quashed the subpoena to CO III McNamer. (*Id*.) Accordingly, the Court finds Plaintiff's objections on the basis of nondisclosure to be without merit.

. . . .

. . . .

. . . .

B.  **Relevant Facts**

At the time of the events alleged in the FAC, Plaintiff was incarcerated at the ASPC-Kingman, which was operated at that time by MTC pursuant to a correctional services agreement with ADC. (Doc. 92 (Defs.' Statement of Facts) (DSOF) ¶¶ 3-4.)

1.  **ADC's Grievance Procedure**

The ADC's grievance policy is set forth in DO 802, *Inmate Grievance Procedure*; the version of DO 802 applicable to Plaintiff's claims was effective December 12, 2013. (Doc. 92 ¶¶ 5-6; Doc. 92-2 at 1-13.)

DO 802 involves a multi-step process beginning with an attempt by the inmate to resolve a complaint informally by discussing the issue with staff in the area most responsible for the complaint or by submitting an Inmate Informal Complaint Resolution using Form 802-11 to the Correctional Officer (CO) III in the inmate's unit within 10 workdays from the date of the complained of action. (Doc. 92 ¶ 18.) The CO III is to investigate the complaint and provide a response within 15 workdays. (*Id*. ¶ 20.) If the inmate does not receive a response within that time period, or at any other stage in the grievance process, he may proceed to the next stage of the grievance process. (*Id*. ¶ 13.) The time to proceed to the next stage begins to run the day after the response was due. (*Id*. ¶ 15.)

If the inmate is dissatisfied with the response to the Inmate Informal Complaint Resolution, he may file a Formal Grievance within 5 days of receiving the response. (Doc. 92 ¶¶ 22-23.) The CO IV Grievance Coordinator logs and assigns a number to the Formal Grievance. (*Id*. ¶ 24.) Unless the inmate is notified in writing of any extension of time, the Deputy Warden is to issue a written response to the Formal Grievance within 15 workdays. (*Id*. ¶¶ 26-27.) The written response is to include a summary of the inmate's complaint, a description of the action taken to investigate the complaint, a summary of the findings, and a decision and supporting rationale. (*Id*. ¶ 27.) The decision at this level is either "Resolved" or "Not Resolved." (*Id*. ¶ 28.) If the inmate is not satisfied with the Formal Grievance response, he may appeal the decision within 5

workdays of receiving the response. (*Id.* ¶ 31.) The Warden or a designee is to issue a written response to the appeal within 20 workdays either affirming or reversing the decision of the Deputy Warden. (*Id.* ¶ 34.)

If the inmate is dissatisfied with the Warden's response, he may appeal the decision to the ADC Director within 5 workdays of receiving the first-level response from the Warden or designee. (*Id.* ¶ 35.) The Grievance Coordinator logs, processes, and forwards all documents to the Central Office Appeals Officer within 5 days of receiving the appeal from the inmate. (*Id.* ¶ 36.) This is the second-level appeal, and within 30 calendar days of receiving the second-level appeal, the Central Office Appeals Officer prepares a response and submits it to the Director for signature. (*Id.* ¶¶ 37-38.) The ADC considers the Director's decision as final and constituting exhaustion of all administrative remedies. (*Id.* ¶ 39.)

ADC inmates housed in private prisons may file Inmate Grievances and Appeals, with certain differences. (Doc. 92 ¶ 41.) The private prison Warden acts in the capacity of the Deputy Warden and provides the written Formal Grievance response to the inmate. (*Id.* ¶ 43.) The Contract Beds Bureau Support Administrator or designee acts in the capacity of Warden for the first-level Inmate Grievance Appeals. (*Id.* ¶ 44.) The second-level appeal still goes to the ADC Director. (*Id.* ¶ 45.)

### 2. Plaintiff's Riot-Related Grievance

Defendants assert that in July 2015, Plaintiff started the grievance process regarding his "missing property" by submitting an "inmate letter." (Doc. 92 ¶ 47.)[4]

---

[4] DSOF ¶ 47 cites to paragraph 53 of Dossett's Declaration, but neither paragraph cites to where in the 43 pages of grievance documents attached to DSOF the actual inmate letter is located. The same is true for all the paragraphs in DSOF and Dossett's Declaration discussing Plaintiff's grievance documents. As such, Defendants fail to comply with Federal Rule of Civil Procedure 56(c)(1)(A). Under this Rule, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court is "not required to comb the record" to find supporting evidence. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001); *see Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("[j]udges are not like pigs, hunting for truffles

Defendants do not provide a copy of this inmate letter, but Plaintiff provides a copy of an Inmate Informal Complaint Resolution dated July 12, 2015, that he submitted to CO III Bergeron on that date.[5]  (Doc. 128 at 15 ¶ 48; Doc. 128-1 at 4.)  The actual document is nearly illegible, but Plaintiff states in his Declaration that it says he was seeking informal resolution to "a riot occurring at ASPC Kingman . . . due to inadequate MTC/ADOC monitoring, oversight and enforcement . . . resulting in but not limited to physical and emotional injuries, property loss and damages."  (Doc. 129 ¶ 27 (ellipsis in original); Doc. 128-1 at 4.)

CO III Bergeron responded to Plaintiff's Inmate Informal Complaint Resolution on July 29, 2015, stating:

> I am in receipt of your Inmate Letter concerning your property from ASP-Kingman.
>
> Due to the nature of the event that took place at ASP-Kingman Hualapai we are unable to resolve this issue.  A state of emergency was declared and normal operating procedures were suspended, as such we are unable to comply with your request for resolution.  MTC is not liable for damages or theft of property resulting from an inmate disturbance.  Your request for reimbursement/assistance in finding lost property is denied.  I consider this matter to be resolved.

(Doc. 129 ¶ 28; Doc. 92-3 at 9.)  The response advised Plaintiff that if he was not satisfied with the decision, he could continue with the Inmate Grievance process as outlined in DO 802.  (Doc. 92-3 at 9.)  Plaintiff asserts that Bergeron did not attach the "supporting ADOC inmate letter, inmate property inventory forms or inmate informal complaint to the response."  (Doc. 129 ¶ 28.)

---

buried in briefs") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Thus, "[g]eneral references without page or line numbers are not sufficiently specific." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  Nevertheless, the Court has reviewed the documents provided by Defendants and did not locate an inmate letter from July 2015.

[5] It is not clear from the record if this Inmate Informal Complaint Resolution is the "inmate letter" Defendants refer to in DSOF ¶ 47.

Plaintiff states that on August 5, 2015, he submitted an Inmate Grievance addressed to Bergeron seeking "reimbursement and compensation for lost and damaged property valued at approximately $2000.00, physical and emotional injuries as a result of MTC/ADOC negligent response to the July 2015 riots at ASPC-Kingman." (Doc. 128 ¶ 49.) Plaintiff's evidence includes an Inmate Grievance dated August 5, 2015. (Doc. 128-1 at 8.) The Inmate Grievance is too faint to be entirely legible but the Court can make out a reference to the July 2015 riot, items valued at approximately $2000.00, and "physical and emotional injuries I sustained as a result of ADOC/MTC negligence." (*Id*.)

In an Inmate Grievance Appeal dated September 10, 2015, Plaintiff wrote that he did not receive a written response to his Inmate Grievance filed August 5, 2015 and so was proceeding to the next level. (Doc. 128 ¶ 49; Doc. 128-1 at 10.) Plaintiff stated that he was

> requesting compensation and or reimbursement for the loss and damage of stored personal property, including legal reference material and personal law books with a[n] estimated replacement value of $2000.00 resulting from what Director Ryan has publicly affirmed was a series of gross negligence, disorganization and disregard for department policies on the part of MTC officials prior to and including the July 2015 riot, including MTC officials['] failure to follow ADOC property inventory and storage procedures by failing to obtain a supervisor[']s review and signature on inmate[']s property inventory certifying the inventory was correctly performed in the absence of the inmate in addition to injuries inmate sustained as a result of MTC/ADOC response to the disturbance.

(Doc. 128-1 at 10.) Defendants submitted to the Court a nearly identical Inmate Grievance Appeal, but the version submitted by Defendants does not include the final phrase "in addition to injuries inmate sustained as a result of MTC/ADOC response to the disturbance."[6] (Doc. 92-3 at 1.)

---

[6] Defendants assert that the "non-processed Inmate Grievance Appeal dated September 10, 2015 that Plaintiff submitted to the Court does not match the document contained in his grievance file" and ADC never received Plaintiff's version of the September 10, 2015 Inmate Grievance Appeal. (Doc. 92 ¶ 77-78.) The Court notes that Defendants argued in their Reply to their Motion to Dismiss that Plaintiff intentionally

On September 24, 2015, PMT Degard asked Plaintiff to resubmit the grievance that Plaintiff said he submitted on August 5, 2015, and Degard asked MTC Program Manager Rydgren for a waiver of grievance time frames. (Doc. 92 ¶ 49; Doc. 92-3 at 8.) In a memo to Rydgren, Degard said he had no record of the August 5, 2015 grievance and apologized if his office lost the grievance. (Doc. 92-3 at 8.) Plaintiff submitted an Inmate Grievance (#M59-134-015) that same day. (Doc. 92 ¶ 50.) Inmate Grievance Number M59-134-015 states:

> I am requesting compensation in the amount of $2000.00 for lost or damaged property, including but not limited to personal law books, reference and legal resource materials, hygiene and food product, and clothing stored and secured in my housing unit area at ASPC-Kingman prior to and including July 6, 2015 prior to my transfer to Red Rock Corr. Cntr following a series of negligent acts on the part of MTC [that] Director Charles L. Ryan had publicly reported contributed to the events between July 2-5, including MTC failure to follow established Department policies, culture of indifference and [illegible] evidenced by MTC failure to obtain a supervisors' review and signature on inmate[']s property inventory certifying the inventory was correctly performed in the absence of the inmate as provided for in DO 909.1.3.4.

(Doc. 92-3 at 7; Doc. 128-1 at 12.)

Defendant Warden Rider responded on October 19, 2015, stating:

> Your property items appear to have been lost and/or damaged during the course of the inmate initiated disturbance occurring on the Hualapai Unit between July 2 and July 4, 2015. It is unclear if the loss or damage occurred as a result of inmate behavior or as TSU attempted to regain control of the housing units. Many of the property items, including

---

falsified the document by adding the last sentence complaining of injuries sustained "as a result of MTC/ADOC response to the disturbance." (Doc. 46 at 4; Doc. 46-1 at 2.) The Magistrate Judge permitted Plaintiff to file a sur-reply addressing the additional evidence and allegation (Doc. 60 at 13), and Plaintiff replied that his version of the Grievance Appeal "appears to differ from" Defendants' version but that he "denies having altered said documents and takes issue at any inference on the part of defense counsel Plaintiff would even consider knowingly submitting a falsified or altered document for consideration by this court." (Doc. 64 at 2.) In their summary judgment briefing, Defendants did not repeat their contention that Plaintiff falsified his version of the September 10, 2015 Inmate Grievance Appeal.

- 12 -

televisions and clothing, were found to be unidentifiable or unsalvageable due to the saturation of chemical agents and/or water damage.

Unless you can provide proof that your loss and/or damage was the malicious or direct negligence of either ADOC or MTC staff, no reimbursement will be recommended for you at this time. You have 5 days from receipt of this response to provide receipts and property inventory forms for the missing clothing. Once these documents are received we will search for your clothing and, if it is in our possession, will return it to you. I consider this issue resolved.

(Doc. 92-3 at 6.)

On November 30, 2015, Plaintiff submitted an Inmate Grievance Appeal to the Contract Beds Bureau Director stating that he did not receive Rider's response until November 25, 2015 and that Rider gave unreasonable deadlines for him "to obtain the requested documentation that was lost, destroyed, or misplaced as a consequence of MTC failure to follow established ADOC property inventory guidelines. Therefore Inmate is proceeding to the next level for the purpose of exhaustion prior to pursuing civil remedies." (Doc. 92 ¶ 52; Doc. 92-3 at 5.) Contract Bed Deputy Bureau Administrator Credio responded to the Grievance Appeal on December 11, 2015, affirming Rider's decision and denying Plaintiff's request for reimbursement. (Doc. 92 ¶ 53.) Credio wrote:

> I have reviewed your grievance appeal in which you are requesting reimbursement for missing property. You state that the response you received for your Inmate Grievance is out of time frames. Furthermore, you state that Warden Rider placed unreasonable time deadlines for you to obtain the requested documentation.
>
> Warden Rider responded to your grievance informing you that unless you can provide proof that your loss and/or damage was the malicious or direct negligence of either ADOC or MTC staff, no reimbursement will be recommended.
>
> I affirm with [sic] Warden Rider's response. ADOC or MTC is not liable for damages or theft of property from an inmate disturbance. Your request for reimbursement is denied.

> It appears that you initiated the Grievance process back on July 2015, with the initiation of the Inmate Informal Complaint. You have had 4 months to obtain the necessary paperwork associated with your grievance. Per Department Order 802—Inmate Grievance Procedure, the inmate shall attach copies of all documentation to support his/her complaint, when submitting their informal complaint.

(Doc. 92 ¶ 53; Doc. 92-3 at 4.) Credio said he considered the grievance resolved and that Plaintiff could appeal to the next level if he disagreed. (Doc. 92-3 at 4.)

Plaintiff filed a second-level appeal with Defendant ADC Director Ryan, stating:

> Inmate is proceeding to the next level for the purpose of exhaustion of administrative remedies prior to pursuing civil resolution, including but not limited to, monetary compensation for loss of personal property, legal resources and reference materials, emotional and physical injury as a result of Management Training Corp. gross negligence and Arizona Dept. of Corr. failure to ensure and monitor contractual compliance. Originals not attached to grievance appeal recd from Contract Beds BureauDirector.

(Doc. 92 ¶ 54; Doc. 92-3 at 3.)

Ryan responded on January 20, 2016:

> Your grievance appeal has been reviewed at Central Office and the Deputy Bureau Administrator's response is affirmed. In order for a claim to be properly submitted to Risk Management, the following facts need to be established: there must be proof that the property did exist, that staff was negligent in the handling of the inmate's property, that the property was secured through proper channels, and that the inmate is the rightful owner.
>
> This office is unable to determine a property loss without having all the facts and documents that support your claim. It is your responsibility to provide all facts and documents in order to rightfully resolve an issue.
>
> You have provided no proof of staff negligence. The Department is not liable for damages or theft of property resulting from an inmate disturbance. Your request for reimbursement is denied.
>
> No further action is warranted in this matter.

(Doc. 92 ¶ 57; Doc. 92-3 at 2; Doc. 128-1 at 19.) Plaintiff states that Ryan's response was not delivered to him until May 20, 2015. (Doc. 128 ¶ 57.)

## V.    Discussion

Defendants argue that Plaintiff "did not submit an Informal Complaint or any other grievance documents relating to the allegations forming the basis of his threat-to-safety, negligence, or negligent training claims." (Doc. 91 at 13.) As such, Defendants argue that Plaintiff "did not provide the ADC or MTC Defendants notice or an opportunity to resolve the alleged problems short of litigation" and did not properly exhaust his administrative remedies as to any of his remaining claims. (*Id.*)

The Court disagrees. The record reflects that Plaintiff's very first Inmate Informal Complaint Resolution stated that he was seeking informal resolution to "a riot occurring at ASPC Kingman . . . due to inadequate MTC/ADOC monitoring, oversight and enforcement . . . resulting in but not limited to physical and emotional injuries, property loss and damages." (Doc. 128-1 at 4.) The process culminated in Plaintiff's final appeal to Defendant Ryan, in which Plaintiff stated that he was pursuing his administrative remedies "prior to civil resolution, including but not limited to, monetary compensation for loss of personal property, legal resources and reference materials, emotional and physical injury as a result of Management Training Corp. gross negligence and Arizona Dept. of Corr. failure to ensure and monitor contractual compliance." (Doc. 128-1 at 21.) Ryan's response first discusses the property loss and the need for Plaintiff to document his property loss. (*See* Doc. 128-1 at 19.) Ryan then wrote: "You have provided no proof of staff negligence. The Department is not liable for damages or theft of property resulting from an inmate disturbance. Your request for reimbursement is denied." (*Id.*)

These documents support that Plaintiff put Defendants on notice of his physical and emotional injuries and property losses related to the July 2015 riot at ASP-Kingman. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (the purpose of a grievance "is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation"). Plaintiff mentions negligence in nearly all of his filings, and he specifically said in his appeal to Ryan that he was pursuing his administrative remedies because of MTC's "gross negligence" and ADC's "failure to ensure and monitor contractual

compliance." Plaintiff was not required to specifically assert that he was also seeking redress for a threat to his safety and negligent training claims. That is because a grievance need not include legal terminology or legal theories or even every fact necessary to prove an eventual legal claim, but to be sufficient, a grievance must "alert[] the prison to the nature of the *wrong* for which redress is sought." *See id.* (emphasis added); *accord Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010). The wrong here is that Plaintiff suffered injuries and property loss related to the July 2015 riot.

Accordingly, the record reflects that Plaintiff exhausted his available administrative remedies, and the Court will deny Defendants' Motion for Summary Judgment and will grant summary judgment to Plaintiff as to exhaustion. *See Albino*, 747 F. 3d at 1176 (stating that where a defendant moves for summary judgment based on failure to exhaust under the PLRA and has failed to show a genuine dispute of fact on the issue of exhaustion, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue).

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 91).

(2) Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies (Doc. 91) is **denied**.

(3) Summary judgment is **granted** in favor of Plaintiff as to exhaustion of administrative remedies.

(4) The Report and Recommendation of Magistrate Judge Willett (Doc. 103) is **accepted and adopted in part** as follows:

    (a) Counts Four, Five and Six of the Second Amended Complaint (SAC) are dismissed without prejudice;

    (b) Defendant John/Jane Doe must answer Count One of the SAC;

(c) Defendants John/Jane Doe, Santiago, Rider, Winkler, Frederick, Ryan (in his individual capacity only), and Diaz (in his individual capacity only) must answer Count Two of the SAC;

(d) Defendants MTC, Washington, Rider, Santiago, Winkler, and Frederick answer the Arizona common law negligence claim in Count Three of the SAC;

(e) Defendant MTC must answer the negligent training claim in Count Three of the SAC.

(5) Within sixty (60) days of the date of this Order, Plaintiff must file a "Notice of Substitution" substituting the actual name(s) of the "Doe" Defendants in Counts One and Two. Unless Plaintiff seeks and is granted an extension of time, the failure to timely file a notice of substitution will result in the dismissal of the Doe Defendants without prejudice.

(6) The Court's stay of discovery pending resolution of the exhaustion issue (Doc. 109) is **lifted**. A Scheduling Order will be issued by the Magistrate Judge as a separate order.

(7) All other matters must remain with the Magistrate Judge for disposition as appropriate.

Dated this 6th day of July, 2018.

*David G. Campbell*
David G. Campbell
United States District Judge